McCooe, J. (dissenting).
I respectfully dissent. This is a summary nonpayment proceeding where the landlord claims that the apartment is not rent regulated based upon improvements made to the apartment. The tenant claims that the apartment is rent stabilized and there is a rent overcharge.
The last stabilized tenant paid a monthly rental of $920.12 and vacancy and longevity increases raised the rent to $1,247.68. The dispute centers on the landlord’s claim to an additional monthly improvement increase of $1,250 (one fortieth of $50,000) raising the legal rent above $2,000 and exempting the premises from regulation. The landlord relied upon the $50,000 figure in the notice and certification attached to the lease as the basis for the increase.
Marina Higgins, vice-president of the Argo Corporation and landlord’s managing agent, testified that the apartment was in bad condition after the former tenant vacated. She prepared a punch list and set a “budget” of $50,000 for the contractor. Two days later, on February 4, 2004, without any prior discussion with the general contractor (GK), she set a contract price of $50,000 and authorized a $20,000 payment without having received an estimate, invoice or contract from GK. A subsequent February 11, 2004 invoice by GK detailed extensive work performed, with a lump-sum contract price of $50,000, acknowledged the $20,000 payment and a $30,000 balance due. The work listed as completed on the invoice actually had not been performed as of that date.
Michael Pipinias, a supervisor at GK, testified that while Argo has been a customer of GK for 30 years the two entities do not share any officers or principals. However Pipinias acknowledged that 80% of GK’s work was performed for Argo.
The trial court granted judgment for the tenant stating:
“There is no evidence that GK was involved in any way in setting the price for the renovation or that the relationship between Argo and GK was in any sense arms length with respect to this job. Nor is there any evidence that the cost of the job was ever itemized.”
The court stated that there was “no way to separate what portion of the $50,000” claimed was for kitchen cabinets, appliances, materials, demolition, rubbish removal, floor repair, plaster or painting. Pipinias estimated on the stand that the kitchen renovation accounted for $14,000 to $15,000, the bathrooms for $12,000, the plumbing for $10,000, the electri *20 cal work for $12,000 to $14,000 and that the “balance” was demolition, rubbish removal, carpentry, plastering and painting. The court noted that based upon the estimate no “balance” of the $50,000 figure remained. The court stated, “I have accordingly not relied upon Mr. Pipinias’ estimated after-the-fact itemization.” The court held that a landlord is required to prove that the claimed work was actually done, that the work constituted an improvement rather than normal maintenance and that the landlord must submit documentation proving each specific improvement. In the absence of invoices and bills for specific improvements, it could not be determined what part of the total cost of the work was for allowable improvements. The court further referenced DHCR Policy Statement 90-10, which provides that adequate documentation should include at least one of the following: “1) Canceled check(s) contemporaneous with completion of the work; 2) Invoice receipt marked paid in full contemporaneous with the completion of the work; 3) Signed contract agreement; 4) Contractor’s affidavit indicating that the installation was completed and paid in full.” The Policy Statement further provides that where there is an identity of interest between the building owner and contractor, additional proof may be required. The court credited the testimony that extensive work was done but determined that:
“it is clear that a substantial portion of the work done was repair to severely damaged walls and woodwork in the apartment, to repair the kitchen underflooring, to refinish the wood floors, and to plaster and paint the entire apartment. There is no reliable contemporaneous evidence in this record that breaks down the cost of the work so that the court can distinguish between the cost of these extensive repairs and the cost of allowable improvements like upgraded kitchen appliances and cabinets, upgraded electrical lines for air conditioning, new plumbing, and the like.”
The court determined that even if Pipinias’ “rough and unreliable effort to break down the cost of the work here were credible” it was insufficient to enable the court to break down costs between allowable items and repair costs. The court further noted that the relationship between Argo and GK was “clearly not the usual arms length relationship between owner and contractor. There was no bid by the contractor. There was no negotiation of the price. In fact, GK never even saw the *21 apartment before the price of the job was set, unilaterally, by Argo.” The court “f[ou]nd specifically here that the invoices and checks presented in evidence are insufficient, given the testimony of petitioners’ own witnesses about the transaction and how the price was set, to establish the reasonable value of the work done.”
The court determined that landlord was not entitled to a rent increase beyond the $1,247.68 amount, the apartment remains subject to rent stabilization and since tenant paid $3,600 per month from April 2004 through September 2005 he was overcharged $42,339.60. The court found that the overcharge was not willful and denied the claim for treble damages.
The judgment should be affirmed for the reasons stated in the trial court’s decision. The landlord bears the burden of proving entitlement to the one-fortieth increase for apartment improvements (see 9 NYCRR 2522.4 [a] [1], [4]; Matter of 985 Fifth Ave. v State Div. of Hous. & Community Renewal, 171 AD2d 572 [1st Dept 1991], lv denied 78 NY2d 861 [1991]) and that the work constituted an improvement and not simply a repair or normal maintenance (Matter of Charles Birdoff & Co. v New York State Div. of Hous. & Community Renewal, 204 AD2d 630 [2d Dept 1994]).
The majority characterizes Birdoff (supra), as “inapposite” since “there is no dispute as to the extent and cost of the improvements.” I disagree. These are the two principal issues in dispute. Birdoff states that the landlord “is required to submit documentation proving each specific improvement. The documentation must be sufficiently specific to enable the DHCR to verify, by cost breakdown, whether some of the work claimed is merely repairs or decorating, for which an increase is not authorized” (Matter of Charles Birdoff & Co., 204 AD2d at 630-631). The lack of specificity is the deficiency in the landlord’s case.
Furthermore there is a significant dispute on the issue of cost. The landlord in the notice and certificate pursuant to Administrative Code of the City of New York § 26-504.2 (b), which is attached to the lease, calculated the one-fortieth increase using the $50,000 contract figure which is consistent with the documents listing it as the “[t]otal price.” The landlord attempted to use a $77,000 cost figure at the trial which appears to be an attempt to bolster a weak case. Cancelled checks have little probative value when 80% of the contractor’s work is with *22 the same managing agent. Regardless of the total cost, the specificity issue remains.
Courts have consistently recognized that it is landlord’s burden to enable the DHCR and the court to differentiate between repairs and improvements (see Matter of 7 W. 87th St. v New York State Div. of Hous. & Community Renewal, 295 AD2d 103 [1st Dept 2002]; Matter of Mayfair York Co. v New York State Div. of Hous. & Community Renewal, 240 AD2d 158 [1st Dept 1997]; Matter of Charles Birdoff & Co. v New York State Div. of Hous. & Community Renewal, 204 AD2d 630 [2d Dept 1994]; Graham Ct. Owners Corp. v Green, 11 Misc 3d 131 [A], 2006 NY Slip Op 50333[U] [App Term, 1st Dept 2006]).
In view of the managing agent’s testimony that following the vacancy the apartment was in great disrepair, the contractor’s invoice which billed a lump-sum $50,000 amount was inadequate to enable the court to distinguish the cost of improvements from the cost of repairs (see Matter of 7 W. 87th St. v New York State Div. of Hous. & Community Renewal, 295 AD2d 103 [1st Dept 2002]; Matter of Mayfair York Co. v New York State Div. of Hous. & Community Renewal, 240 AD2d 158 [1st Dept 1997]). Furthermore since the managing agent had unilaterally set the $50,000 price without receiving an estimate, invoice or contract and made a payment without having consulted the contractor, the court properly rejected Pipinias’ conforming “estimated after-the-fact itemization” (see Matter of Gruber v New York State Div. of Hous. & Community Renewal, 1 AD3d 112 [1st Dept 2003]).
Landlord’s reliance upon Policy Statement 90-10 is unavailing. First, the policy statement items, if not expressly, implicitly require that the documentation be contemporaneous with the work performed so as to provide a reliable basis for review. While landlord attempts to aggregate the specification sheet, the invoice and the payment checks to establish compliance, even the aggregate documentation is substantively deficient as the trial court observed. There was no arm’s length negotiations in the managing agent’s unilateral setting of the price. The invoice, setting forth a lump-sum bill in accordance with that price was insufficient to enable the court to differentiate the costs for improvements from the costs for repairs. Even assuming that the landlord could fit any or all of these documents or ensuing payment checks into one or more of the Policy Statement 90-10 categories, mere compliance with the minimal *23 requirement of Policy Statement 90-10 does not foreclose a credibility determination by the trier of the facts which is entitled to great deference.
Landlord’s reliance upon DHCR determinations for the broad proposition that an itemization of costs is unnecessary in the case of an extensive renovation are not compelling. First, these orders are fact specific, and in any event, any suggestion that some itemization of costs is not required to sustain an improvement increase, as urged by the landlord, does not comport with the Birdoff line of cases mandating that documentation reliably enable the court to distinguish repairs from improvements (Matter of Charles Birdoff & Co. v New York State Div. of Hous. & Community Renewal, 204 AD2d 630 [2d Dept 1994]). Landlord’s trial testimony acknowledged that this was not a gut renovation. The determination as to how to apportion repairs and improvements in any renovation is a factual issue for the trial court. The trial court acknowledged that upgraded kitchen appliances and cabinets, upgraded electrical lines and new plumbing are properly comprised within allowable improvements. It was the court’s understandable inability in the face of the lump-sum invoice to properly distinguish repair costs from improvement costs which was the determinative basis for its ultimate decision to disallow the increases and its fact finding and credibility determinations are entitled to great weight (Claridge Gardens v Menotti, 160 AD2d 544 [1st Dept 1990]).
The crux of the majority’s opinion is that this was a total renovation and therefore the landlord was not required to distinguish the cost of improvements from the cost of repairs. The majority has not shown any factual basis for its conclusion that this was a total renovation. The trial court, as the trier of the facts, found that it was not a total renovation stating: “it is clear that a substantial portion of the work done was repair to severely damaged walls and woodwork in the apartment, to repair the kitchen underflooring, to refinish the wood floors, and to plaster and paint the entire apartment.”
The landlord’s table of contents states that the failure to file either plans or permits and “[t]o the Extent any Work was done by Unlicensed Contractors” is irrelevant. When a contractor violates the law by not filing or working with plans and the landlord acquiesces in such conduct, it raises questions as to their true relationship and an inference is created that the reason was to avoid oversight by city inspectors.
*24 Considering the relationship of the managing agent and the general contractor, the lump-sum amount unilaterally set by the managing agent, the fact that the general contractor did not file plans and most importantly the landlord’s failure to document each specific improvement and its cost, the trial court as the trier of facts properly found that the landlord did not satisfy its burden of proof.
The judgment should be affirmed.
McKeon, RJ., and Davis, J., concur; McCooe, J., dissents in a separate opinion.